Upon petition for rehearing.

The state is morally bound to provide a safe, sanitary and hygienic place of employment for a physician employed as such in one of its tubercular sani-toria, and failure to do so thereby causing the physician to become afflicted, entitles the physician to an award.
CHARLES J. SCHUCK, Judge.
At the April term, 1946, this court denied the claimant’s right to any award on the theory that as a physician at the tubercular Hopemont sanitarium he could not recover compensation from the state, in consequence of his having contracted tuberculosis, unless it was shown that the department involved *262 was guilty of negligence óf such nature as would contribute to his contracting the disease in question. Subsequently a motion for a rehearing was granted and we now have before us testimony which presents a full and complete picture of the situation that prevailed at Hopemont at the time claimant contraced the disease and the conditions prevailing under which he was obliged to render his services as such physician. We learn from the testimony that he was obliged to give his services as such physician for a minimum of a year from the date of his entering the institution (record p. 4) and that if he concluded to quit or sever his connection with the sanitarium before the end of that period he would be virtually barred from offering his professional services to any other similar institution by reason of an unwritten rule of law of the American Medical Association to that effect (record p. 5). The purpose of this law is obvious and without it endless confusion and embarrassment would result; and a sanitarium such as Hopemont might experience serious difficulty in maintaining its staff if this ethical rule were not invoked. This uncontradicted testimony was not before us at the previous hearing and in our opinion now gives a reasonable and potent answer to the proposition that claimant could have severed his connection with the institution if he was dissatisfied with prevailing conditions while engaged as a physician there. He began his work at Hopemont in January 1944 and was stricken with the disease in October 1944. so that he had not yet served a year of his contract at the time he became afflicted with tuberculosis. He has been bedfast at the institution since that time. A thorough physical examination of claimant at the beginning of his employment revealed that he was in good health and free from any signs or indications of tuberculosis.
The testimony further shows that claimant was called upon to attend eighty patients (record p. 11) and that he was assisted in his work by not over three nurses; that considering existing conditions, the dangerous nature of the disease and the ever-present possibility of communication of the disease to doctors, nurses, and those in attendance, not less than thirty-two nurses ought to have been employed to care for these eighty patients *263 and a larger staff of doctors maintained to properly supervise the treatment of such a large number; these standards being fixed by the recognized medical authorities of our country on the treatment of tuberculosis, as shown by the American Review of Tuberculosis of May 1945, filed as part of the record with us. We are further advised in this matter that the condition of sanitation and hygiene existing in a tubercular sanitarium, tending to arrest the disease and to prevent its communication to others, necessarily depends on the number and efficiency of the nurses employed. It may well be said, of course, that the state could not, from a financial standpoint, be called upon perhaps to have a full quota of doctors and nurses as required by the standards heretofore referred to, but in view of the marked difference between the number actually employed at Hopemont at the time and the number fixed by the American Review of Tuberculosis, conditions there were such, in our opinion, as to present extraordinary risks to those employed as doctors, nurses or attendants.
From the testimony we learn further that tuberculosis is an air-borne disease and that the tubercle bacillus can be transferred from an infected patient to others through the air. All of which means that a sufficient staff of nurses must be maintained at a tubercular sanitarium to properly and adequately instruct and watch over afflicted patients to prevent communication of the disease and to maintain the necessary and required sanitary and hygienic standards for arresting the disease and preventing its communication to others. In this connec'ion we are of the opinion that the staffs of both doctors and nurses were inadequate at Hopemont, at the time claimant became afflicted, to meet the demands of the institution, and to properly take care of the large number of patients then confined there. The testimony also reveals that additional nurses could have been obtained but that the salaries paid were below those fixed in other states for the same kind and standard of services, and consequently brought about a refusal to serve on the part of prospective nurses. All of these facts added together show obviously that claimant was not afforded a reasonably safe place in which to render his services and thus fulfill his contract *264 of employment to the state. The duty to properly protect claimant in his work as such physician was breached, and in equity and good conscience the state was morally bound to provide a reasonably safe, sanitary and hygienic institution for those employed to discharge their respective duties there and to maintain the standards of efficiency that the very nature of the sanitarium required.
A survey by efficient experts was made of the Hopemont sanitarium, at the request of our Governor about ten or twelve months ago. They found that the absolute minimum of salaries to properly take care of the sanitarium was $270,000.00. The present working cost is, and for several years past has been, $192,000.00. The testimony shows (record p. 24) that the inability to get nurses is attributed to lack of funds with which to pay the prevailing salary range. Another survey of Hopemont was also made by one Esta McNebb, at the time supervisor of Lowman Pavilion, the tuberculosis division of the City Hospital at Cleveland. Miss McNebb is at the present time the tuberculosis consulting nurse of the Veterans' Administration. While her report goes into all the details concerning the conditions existing at Hopemont, her conclusion is perhaps sufficient for the purpose of this opinion. She concludes as follows: “The medical care of the patients at Hopemont is excellent, the clinical material is abundant; the physical plant is adequate and capable of adaptation; the nursing department has excellent leadership, but is too limited to meet the needs of so many patients." (Record pp. 44-45).
In view, therefore, of all the testimony now submitted and the facts now before us, most of which were unknown to us at the first hearing, we are constrained to reverse our previous finding and order, and to hold that the state, having failed in its duty to claimant to provide a safe, sanitary and hygienic place of employment, is morally bound to compensate him for his loss of services and the suffering incident to the disease contracted by him.
The matter of just and proper compensation now concerns us in fixing the amount of an award to claimant. He was receiv *265 ing a salary of $2000.00 per annum at the time he was stricken in October, 1944. He has been bedfast since that time and the testimony of Doctor Salkin, the superintendent of the institution (record p. 17) is to the effect that claimant will not be able to assume his duties for another year. Considering the claim from the viewpoint of our law applicable to claims before the workmen’s compensation commission or department, claimant, if he had been injured in the course of his employment as the term “injury" is defined, would have been entitled to a maximum award of $18.00 per week for a maximum period of 156 weeks, assuming that the injury would be of a non-permanent nature, ch. 131, art. 4, sec. 6, Acts 1945 Legislature, code chapter 23, art. 4, sec. 6, and would therefore be entitled to the full sum of approximately $2800.00. However, in view of the fact that claimant’s length of disability is somewhat problematical and that he may be able to return to his duties in another year, or approximately two or two and one-half years from the date he was first stricken, we feel that an award of two thousand dollars ($2000.00) would be proper and we so find accordingly.